**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

KRISTIN LAWVER             )
                          )
        Plaintiff,         )
                          )
    v.                     )        C.A. No. CPU4-16-000307
                          )
CHRISTIANA CARE HEALTH      )
SYSTEM, INC.,              )
                          )
        Defendant.         )

Submitted: March 18, 2016
Decided: May 6, 2016

Cara E. Williams, Esquire                      Justin K. Victor, Esq.
MacElree Harvey, Ltd.                          Morgan, Lewis & Bockius, LLP
5721 Kennett Pike                              The Nemours Building
Centreville, DE 19807                          1007 N. Orange Street, Suite 501
                                               Wilmington, DE 19801

*Attorney for Plaintiff*

                                               Michael J. Ossip, Esq.
                                               Morgan, Lewis & Bockius, LLP
                                               1701 Market Street
                                               Philadelphia, PA 19103

                                               *Attorneys for Defendant*

**MEMORANDUM OPINION AND ORDER**
**ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Christiana Health Care System Inc.'s ("Defendant")

Motion to Dismiss the Complaint of Kristin Lawver ("Plaintiff"). On January 22, 2016, Plaintiff

filed this action against Defendant alleging that she was wrongfully terminated from her

employment. On March 2, 2016, Defendant filed a Motion to Dismiss, asserting that Plaintiff

failed to state a claim upon which relief can be granted (the "Motion"). On March 18, 2016, the

Court heard argument on the Motion, and reserved its decision. This is the Court's final decision

and Order on Defendant's Motion to Dismiss.

# FACTUAL ALLEGATIONS

The following is a summary of alleged facts taken from Plaintiff's Complaint and serves as the basis for Plaintiff's claim for alleged wrongful termination. On May 31, 2012, Plaintiff began her employment with Defendant as a medical assistant in the Vascular Department. At that time, Linda Colbourne ("Colbourne") served as the Director of Cardiovasular in Plaintiff's department.[1] In December 2012, Karmelia Melvin ("Melvin") began training Plaintiff on a new software system. Plaintiff claims that Melvin—who was friends with Colbourne—was aggressive, insulting and hostile toward her on several occasions. Plaintiff complained of Melvin's behavior to Colbourne, who dismissed her grievance without taking any action. Plaintiff then followed up on this grievance with Employer Relations. As a result, Melvin was no longer present in the office while Plaintiff was on duty.

In late December 2012, Plaintiff received a disciplinary warning for being late to work on three occasions. Plaintiff contends that on each occasion, she was less than 15 minutes late. Under Defendant's disciplinary policy, the formal discipline process includes three steps.[2] Step One—the First Step Reminder—"typically follows informal coaching [and] is used to counsel employees and address repeated unresolved performance problems and/or minor violations."[3] Step Two—the Second Step Reminder—is used for "on-going performance problems that were previously addressed in the [First] Step Reminder or behavioral choice that result in more serious rule violations."[4] Step Three—the Decision Making Leave—constitutes the final step of the discipline process.[5] Under this step, an employee will receive a one day paid administrative leave

---

[1] Colbourne served in this capacity until May 2013.
[2] Pl. Compl. ¶ 12, Ex. A.
[3] Pl. Compl. Ex. A.
[4] *Id.*
[5] However, the policy also indicates that for more serious rule violations, this step may also be the first disciplinary action taken.

so that she "may reflect upon the ongoing performance/behavioral problems or repetitive rule violations." Defendant's employees are permitted to appeal any disciplinary action, which is governed by Defendant's Internal Problem-Solving Process.[6]

On May 15, 2013, Plaintiff received a Second Step Reminder for being late to work on an additional three occasions: February 6, 2013; February 20, 2013; and April 16, 2013. Plaintiff concedes that she arrived to work late on February 6th, but attributes her tardiness to an alarm clock malfunction. Plaintiff disputes that she arrived to work late on February 20th. She claims that she called Colbourne to notify her that she was feeling ill, and therefore, did not plan to come into work. Plaintiff began to feel better a few hours later and ended up going to work, because she knew that the facility was short-staffed and had a full patient schedule. Plaintiff also claims that her tardiness on April 16th was because there were no available parking spaces due to an event at the facility.

Plaintiff contends that she did not appeal these first two disciplinary actions—her First Step Reminder issued in December 2012 for arriving late to work, and her Second Step Reminder issued in May 2013 for arriving late to work—because she was unaware of her rights under Defendant's disciplinary policies and procedures.[7]

On August 29, 2013, a patient entered the facility for a scheduled appointment. Unfortunately, the patient was locked in a lab room, and was not discovered until the end of the day. The nurse practitioner on duty drafted a report to risk management, and on September 4, 2013, Colbourne and Patricia White-Murray ("White-Murray"), who served as Plaintiff's

---

[6] Compl. ¶ 13, Ex. B.
[7] Plaintiff was unaware of Defendant's disciplinary policies and procedures because she had not attended a New Employee Orientation and was never provided an employment manual when she was hired.

manager at the time, met with Plaintiff and asked her to provide an account of the incident.[8] During that discussion, Plaintiff was notified that she had been named as the individual who locked the lab room door. Plaintiff denies that she locked the door, and instead claims that Dawn McMullin ("McMullin"), a medical assistant employed by Defendant, locked the door. Plaintiff alleges that, contrary to what Colbourne and White-Murray stated, the other employees involved in the incident did not identify her as the individual who locked the patient in the lab room. As a result of this incident, Plaintiff attended a debriefing with risk management. Plaintiff alleges that Defendants did not require the two other employees who were also "involved in the incident" to attend a debriefing. Thereafter, Plaintiff notified Employer Relations about her concerns.

On January 10, 2014, Plaintiff received Decision Making Leave, which resulted in a one day paid administrative leave for: (1) forwarding an inappropriate email; (2) refusing to report to her supervisor's office after being asked more than once, and; (3) being disrespectful to a co-worker. Plaintiff claims that she did not forward an inappropriate email, but rather, accidentally sent an email invitation for an interoffice meeting to a provider. Upon realizing this mistake, she notified her supervisor and ensured that the provider knew that the email was not intended for him. Plaintiff claims that Defendant's email policy is not intended to cover this type of situation. Plaintiff also claims that she did not fail to report to her supervisor. Rather, she alleges that she and her supervisor were discussing an issue at Plaintiff's work station. Plaintiff claims that at no time did the supervisor ask Plaintiff to report to her office, and thus, Plaintiff believed that the issue was resolved. Finally, Plaintiff claims that the issue concerning her alleged disrespectful behavior was manufactured.

---

[8] Plaintiff claims that, between September 4, 2013 and January 10, 2014, White-Murray continuously emailed her in an abusive and hostile manner.

Plaintiff eventually learned of Defendant's disciplinary procedures, and appealed the Decision Making Leave to Defendant's peer review panel. Plaintiff maintains, however, that she was prevented from introducing documents supporting her case, as required by Defendant's Employee Problem Solving Procedures.[9]

On October 2, 2014, Melvin and Plaintiff worked together, and Plaintiff alleges that Melvin treated Plaintiff in an abusive and aggressive manner. On October 3, 2014, Plaintiff reported this behavior to Colbourne, who was still involved in management.

On October 7, 2014, Defendant terminated Plaintiff for allegedly failing to follow proper workflow procedures when rooming patients. On October 13, 2014, Plaintiff filed a Termination Appeal, and explained that there was a delay in rooming patients because the patients were double or triple booked, which was outside of her control. Defendant, however, denied Plaintiff's appeal on November 17, 2014.

Plaintiff asserts that the foregoing allegations demonstrate that Defendant manufactured her termination.[10] Plaintiff maintains that the stated reasons for her termination were mere pretext for retaliation,[11] because she reported Melvin's inappropriate conduct to Colbourne who was friends with Melvin. Thus, Plaintiff alleges that her termination was a breach of the covenant of good faith and fair dealing.

## PARTIES' CONTENTIONS

In the Motion, Defendant contends that Plaintiff's Complaint should be dismissed because she has failed to state a claim for wrongful termination upon which relief can be granted. Defendant claims that Plaintiff has failed to show that its conduct constituted an act of fraud, deceit, or misrepresentation, which is required in order to prevail on a claim for breach of good

---

[9] Compl. ¶ 36, Ex. G.
[10] *Id.* at ¶ 43
[11] *Id.* at ¶ 44.

faith and fair dealing. Moreover, Defendant argues that the exhibits attached to Plaintiff's Complaint contradict her allegations, and her claim that Defendant manufactured evidence is an unsubstantiated conclusory allegation. Defendant maintains that while Plaintiff disagrees with its determination that her conduct warranted disciplinary action and eventual termination, such a claim is insufficient to supply the aspect of fraud, deceit or misrepresentation necessary to demonstrate that Defendant breached its duty of good faith and fair dealing. Therefore, Defendant argues that Plaintiff's Complaint should be dismissed.

On the other hand, Plaintiff contends that she has properly claimed that her immediate supervisors manufactured reasons for her termination. She further claims that her supervisors fabricated her records as a way of retaliating against her for reporting the inappropriate conduct of Melvin, who was Colbourne's friend. In addition, Plaintiff claims that her supervisors falsely named her as the individual responsible for the 'locked-lab-room' incident, and that they manufactured the reasons underlying her third disciplinary action. Not surprisingly, Plaintiff asserts that the exhibits attached to her Complaint do not contradict her allegations.

## DISCUSSION

*Court of Common Pleas Civil Rule* 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the Court "'must determine whether it appears with reasonable certainty that, under any set of facts which could be proven to support the claim, the plaintiff[ ] would not be entitled to relief.'"[12] In making this determination, the Court is limited to consider only facts contained within the four corners of the complaint, and must accept all well-plead allegations as

---

[12] *Vanderbilt Income & Growth Associates, L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996) (citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 326 (Del. 1993)).

true.[13] "An allegation, though vague or lacking in detail, is nevertheless 'well-pleaded' if it puts the opposing party on notice of the claim being brought against it."[14] While the Court is required to accept only those 'reasonable inferences that logically flow from the face of the complaint,' [it] 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'"[15] Moreover, the Court may dismiss a claim "if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[16] Ultimately, "[d]ismissal is warranted only when 'under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted.'"[17]

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing. It is well settled that Delaware follows the employment-at-will doctrine, which presumes "that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite."[18] Under the employment-at-will doctrine, an employer is generally permitted to discharge an employee at any time, without cause.[19] Notwithstanding this general rule, every employment contract contains an implied covenant of good faith and fair dealing, which "permits a cause of action against an employer for deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal."[20] However, Delaware courts "have been reluctant to recognize a broad application of the covenant of fair

---

[13] *Bowden v. Pinnacle Rehab. & Health Ctr.*, 2015 WL 1733753, at *1 (Del. Super. Apr. 8, 2015) (citing *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. 2009)).

[14] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del.2002); *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 406 (Del. 1995)).

[15] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2003)).

[16] *Malpiede*, 780 A.2d at 1083 (internal citations omitted).

[17] *Bowden*, 2015 WL 1733753, at *1 (citing *Thompson v. Medimmune, Inc.*, 2009 WL 1482237, at *4 (Del. Super. 2009)).

[18] *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 830 (Del. 2005) (quoting *E.I DuPont Nemours v. Pressman*, 679 A.2d 436, 437 (Del. 1996)).

[19] *Williams v. Cato Oil*, 2010 WL 3707583, at *3 (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992)).

[20] *Id.* (citing *Pressman*, 679 A.2d 436 at 437).

dealing and good faith out of a concern that the covenant could . . . effectively end at-will employment."[21] Therefore, the Court will construe the covenant narrowly.

In order to survive a motion to dismiss on a breach of implied covenant of good faith and fair dealing, an employee must plead facts sufficient to establish that her employer's decision to terminate her constituted "an aspect of fraud, deceit or misrepresentation."[22] There are four situations in which this implied covenant limits an employer's broad authority to terminate an employee: (1) where the employee's termination violated public policy; (2) where the employer misrepresented an important fact that the employee relied upon to either accept a new position or remain in a present position; (3) where the employer used its superior bargaining power to deprive the employee of clearly identifiable compensation related to her past service; or (4) where an employer falsified or manipulated employment records to create fictitious grounds for termination.[23]

In this action, Plaintiff contends that Defendant breached the implied covenant of good faith and fair dealing by falsifying or manipulating her employment records, and therefore created fictitious grounds for her termination. In order to prevail on a wrongful termination claim premised on breach of the implied covenant, an employee has the burden to prove that her employer intentionally falsified her records.[24] Hence, to survive this Motion, Plaintiff must demonstrate that she sufficiently plead facts that indicate that Defendant falsified her employment records. When the allegations in the Complaint are viewed in a light most favorable to Plaintiff, they do not set forth a viable claim for wrongful termination on the asserted premise that Defendant intentionally falsified Plaintiff's employment records.

---

[21] *Id.* (citing *Pressman*, 679 A.2d 436 at 442).

[22] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992).

[23] *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001) (citing *Pressman*, 679 A.2d at 442–44).

[24] *Rizzitiello*, 868 A.2d at 831 (citing *Pressman*, 679 A.2d at 442–44).

Plaintiff received disciplinary actions on three occasions before she was terminated.[25] In December 2012, Plaintiff received a First Step Reminder for arriving late to work on three occasions. Then, in May 2013, Plaintiff received a Second Step Reminder for again arriving late to work on three other occasions. Plaintiff does not deny that she was late to work in these instances, however, she contends that, in each instance, her tardiness was the result of extenuating circumstances, and therefore should be excused. In an attempt to strengthen this contention, Plaintiff attached a copy of her Disciplinary Action Record and an email that she sent to Colbourne, dated May 17, 2013. These documents, however, do not support her contention that Defendant intentionally falsified her employment records. Instead, the documents merely demonstrate Plaintiff's belief that her conduct did not warrant disciplinary action. There is no evidence in the record before the Court which shows that Defendant manufactured or falsified Plaintiff's employment records with respect to the disciplinary action that she received for being tardy to work.

The third instance in which Plaintiff received a disciplinary action occurred in January 2014, when she was given a Decision Making Leave for forwarding an inappropriate email, refusing to report to her supervisor's office after being asked more than once, and being disrespectful to a co-worker. Plaintiff does not deny that she forwarded an inappropriate email, nor does she deny that she failed to report to her supervisor's office when asked. Instead, Plaintiff provides explanations about why her conduct did not warrant disciplinary action. Notably, in her Complaint, Plaintiff denies that she was disrespectful to a co-worker. However, this contention is contradicted by her very own statement that she submitted with her

---

[25] Although Plaintiff included the incident in which a patient was locked in a lab room within her Complaint, this incident did not actually result in any sort of disciplinary action.

9

Disciplinary Action Record, which is attached to the Complaint.[26] In this statement, Plaintiff indicated that she was "committed to improving [her] performance" at work by being mindful of how she spoke to her coworkers, by striving to work with her coworkers as their teammate, and by "removing obstacles" that were preventing her from working effectively with her supervisor.[27] This inconsistency is problematic for Plaintiff because the Court may dismiss a claim where "the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[28] Moreover, there is no evidence in the record before the Court which shows that Defendant manufactured or falsified Plaintiff's employment records with respect to this third disciplinary action.

Plaintiff was eventually terminated in October 2014 for failing to follow proper workflow procedures when rooming patients. Plaintiff appealed this decision, and explained that there was a delay in rooming patients because the patients were double or triple booked, which was outside of her control. Again, in her Complaint, Plaintiff does not deny that there was a delay in rooming patients. Instead, she provides an explanation of why her conduct did not warrant disciplinary action.[29] Once more, there is no evidence in the record before the Court which indicates that Defendant fabricated or falsified Plaintiff's employment records or the reason behind its decision to terminate her from employment.

The Court recognizes that it is reasonable to infer that Plaintiff's relationship with Colbourne and Melvin may have had some affect on Plaintiff's termination. However, such tension among these employees, without more, does not establish that Defendant manufactured

---

[26] Compl. Ex. E

[27] Plaintiff specifically mentioned the importance of teamwork and supporting her coworkers' success. She also claimed that she could improve in being courteous to other coworkers "by taking a moment to collect [her] thoughts before responding to coworkers[,] especially during high volume/busy patient hours." Finally, Plaintiff indicated that she "plan[ned] to work towards removing obstacles that [were] prevent[ing] her from developing an effective working relationship with [her] supervisor." *See* Compl. Ex. E.

[28] *Transdigm Inc. v. Alcoa Global Fasteners, Inc.*, Del. Ch., C.A. No. 7135, Parsons, V.C. (May 29, 2013).

[29] Compl. Ex. E

of falsified Plaintiff's employment records. In *E.I. DuPont de Nemours and Co. v. Pressman*,[30] the Delaware Supreme Court noted the problem in relying on personal motivations as the basis for wrongful termination claims:

> Employment relationships are complex, ambiguous and, ultimately, personal. One commentator has described the peculiar features of employment: Employment agreements are intrinsically different from commercial contracts in many fundamental ways. Employment agreements create an ongoing personal relationship between employee and employer-or in larger companies, with the employer's managerial and supervisory agents-which transcends purely economic interests. This aspect of employment relationships counsels caution about creating causes of action based solely on personal motivations. Employees and their supervisors work closely together and personality clashes have the potential to interfere seriously with the achievement of an organization's mission. Dislike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment.[31]

In considering the complexities of employment relationships, the Court finds that in this matter, even if Colbourne or Melvin's alleged dislike, hatred, or ill-will did have an impact on Plaintiff's employment, such a personal motivation cannot be the sole basis for a wrongful termination cause of action. A cause of action for wrongful termination requires more than personal animus to displace the venerable employment at-will doctrine. Delaware Courts construe the implied covenant of good faith and fair dealing narrowly when applied to the broad doctrine of at-will employment, and the Court is not inclined to expand this narrow application in this matter. The documentary evidence Plaintiff used in an attempt to strengthen her claims merely demonstrates Plaintiff's belief that her conduct did not warrant disciplinary action, and fails to substantiate her claim that Defendant manufactured the underlying reasons for her termination.

---

[30] 679 A.2d 436, 437 (Del. 1996).
[31] *Id.* at 444 (internal quotation omitted)

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED this 6th day of May, 2016.**

Sheldon K. Rennie,
Judge